FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

ROBERTSON-CECO CORP.,

          Plaintiff,

v.                                                          CIVIL ACTION NO. 5:07-cv-00204

DIVERSIFIED ENTERPRISE, INC.,
and ANDREW J. WHITTAKER,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff Robertson-Ceco's motion for summary judgment [Docket 131, 164.] For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

*I.     BACKGROUND*

In July 2006, Defendant Diversified Enterprise, Inc. ("Diversified") contracted with Plaintiff Robertson-Ceco Corp. ("Ceco") to buy a custom, pre-fabricated building that was intended to be used by Shepherd's Care Family Worship Center, a church located in Hinton, West Virginia. (Docket 160.)  Diversified's president, Defendant Andrew J. Whittaker—who was flush with cash having won a multi-million dollar, multi-state lottery jackpot a few years back—executed a written personal guaranty in June 2005 to Ceco through which he assured Ceco that he would guaranty payment to Ceco for any outstanding debt owed to Ceco for products and services Ceco sold and delivered to Diversified. (Docket 164-1.)

This dispute centers on Diversified's refusal in September 2006 to accept delivery on or pay for the building constructed by Ceco and Defendant Whittaker's refusal to honor his

personal guaranty, conduct which precipitated the initial filing of this lawsuit well over five years ago. (Docket 1.)

On January 29, 2008, Plaintiff filed his first motion for summary judgment against Defendant Diversified based on its alleged breach of the custom building contract. (Docket 16.) On September 25, 2008, the Court granted summary judgment in favor of Plaintiff against Diversified—and erroneously, also against Defendant Whittaker.[1] (Docket 46.) On November 7, 2008, the Court entered judgment awarding Plaintiff $157,613.96, plus interest, against both Defendants. (Docket 46, 48.) The basis for the Court's judgment was that, because Defendants failed to respond to Plaintiff's discovery requests for admissions, Plaintiff's requests were deemed admitted by Defendants. (Docket 46 at 9.)

In early January 2009, Plaintiff set about the process of obtaining necessary writs to satisfy its judgment. On January 15, 2009, Defendants filed a joint motion seeking to set aside the judgment in favor of Plaintiff on the basis that the parties had been actively engaging in settlement negotiations for an amount far less than the Court's damages award. (Docket 59.) Defendants complained that those negotiations had been hindered by, among other matters, a change in Defendants' counsel, and Defendant Whittaker's health issues.[2] Defendants further argued that the judgment award was unfair because Plaintiff failed to mitigate its damages and that the interest rate used to calculate the damage award was excessively high. Nowhere in their

---

[1] The judgment against Defendant Whittaker was improvidently granted for the simple reason that Plaintiff had not sought summary judgment against Defendant Whittaker, rather only against Diversified. As is explained below, this error went unnoticed and uncorrected by the parties and the Court for almost a year and a half.

[2] Defendants Diversified and Whittaker have been jointly represented by no fewer than *five* different attorneys in the course of these proceedings.

2

motion or in their reply (Docket 65) to the Plaintiff's response (Docket 62) did Defendants argue that summary judgment against Defendant Whittaker was improvidently granted.

Throughout the months that followed, Plaintiff continued its efforts to satisfy its judgment through legal process against both Defendants.[3] Neither Defendant sought a stay of execution from the Court. On May 6, 2009, the Court denied Defendants' motion to set aside the $157,613.96 judgment. (Docket 103.) The bases for the Court's decision were that Defendants' motion was untimely; Defendants offered no evidence that mitigation of damages by Plaintiff was possible; the interest rate used was the correct rate; and the lack of continuity of Defendant's counsel and Defendant's health problems did not warrant re-opening the case.

On May 21, 2009, Defendants filed their notice of appeal of the Court's denial of their motion to set aside judgment. Some nine months later, on February 25, 2010, Defendant Whittaker filed his motion seeking relief from the summary judgment. (Docket 107.) For the first time, Defendant Whittaker argued that the Court should relieve him from the November 7, 2008, summary judgment order on the grounds that Plaintiff's summary judgment motion sought judgment only as to Diversified and not Whittaker. (Docket 108.) Plaintiff responded in opposition arguing that the motion was untimely, that Defendant Whittaker had substantively responded in opposition to the summary judgment motion, and that any prejudice to Whittaker was his own fault, his lawyers' fault, or both.

Following issuance of the Court's July 14 and 16, 2010, *Memoranda Opinions and Orders* and the subsequent limited remand of the case by the Court of Appeals for the Fourth Circuit for the purpose of permitting the Court to grant Defendant Whittaker's motion for relief

---

[3] Ultimately, Plaintiff succeeded in its task by selling real estate owned by Defendant Whittaker.

from judgment, the case against Defendant Whittaker proceeded. A new scheduling order was issued and discovery was conducted.

On January 18, 2011, Plaintiff again moved for summary judgment against Defendant Whittaker. (Docket 131.) This time Plaintiff argued that it was entitled to summary judgment because it was undisputed that Plaintiff relied upon Defendant Whittaker's written personal guaranty when Plaintiff entered into its contract with Defendant Diversified—a contract that the Court, by granting summary judgment against Diversified, conclusively found Diversified breached. Defendant Whittaker opposed Plaintiff's motion contending that the personal guaranty pertained to an "entirely separate business transaction" from the one that is the subject of this lawsuit. (*Id.* at 5.) Whittaker further argued that material facts existed on the question of whether Plaintiff had mitigated its losses. In reply, Plaintiff argued that the parole evidence rule barred Whittaker's claim that the personal guaranty related to a collateral transaction and that Plaintiff could not collaterally challenge the $157,613.96 judgment against Diversified because that judgment is final and, thus, unassailable. (Docket 135.)

On June 17, 2011, the Court denied Plaintiff's motion for summary judgment because Plaintiff offered no evidence that demonstrated that Whittaker's personal guaranty induced Plaintiff to enter into its contract with Diversified. (Docket 151.) The Court further noted that Plaintiff was not entitled to summary judgment on a contract theory because Plaintiff's sole claim against Whittaker was not a contract claim but rather a promissory estoppel claim.

After obtaining leave from the Court, Plaintiff amended its Complaint alleging: Count I—a breach of contract claim against Defendant Diversified; Count II—a promissory estoppel claim against Defendant Whittaker; Count III—specific performance by Defendant Diversified;

4

and Count IV—Breach of Personal Guaranty by Defendant Whittaker. (Docket 160.) On October 26, 2011, having obtained leave from the Court, Plaintiff supplemented its previously filed summary judgment motion (Docket 131). (Docket 164.) Plaintiff's supplemental filing included an affidavit from Plaintiff's credit manager who stated, among other things, that Whittaker's personal guaranty induced Plaintiff to enter into its contract with Diversified. (Docket 164-3.) Defendant Whittaker opposed Plaintiff's supplemental filing principally arguing that Plaintiff's contract with Diversified was not foreseeable to Whittaker because the personal guaranty was executed more than a year earlier, the personal guaranty related to a different contract, Whittaker had no knowledge of the building contract, and because the building contract was not executed by an officer or other agent of Diversified who had authority to enter into such a contract.[4] (Docket 166.) In reply, Plaintiff reiterated its former arguments and argued that further discovery in the case would only further delay resolution of a case that has had a tortuous procedural history spanning several years on the Court's docket. (Docket 167.)

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if factual issues exist that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the moving party demonstrates the lack of evidence to support the

---

[4] Whittaker also complains that Plaintiff's supplemental filing, which is styled as a "motion," violates the Court's local rules because it is not accompanied by a separately filed supporting memorandum. (Docket 166.) It is apparent to the Court that Plaintiff's filing is a supporting supplementary memorandum to its previously filed summary judgment motion and is simply mis-styled as a motion.

non-moving party's claims, the nonmoving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. *Matsushita,* 475 U.S. at 587. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. *Celotex,* 477 U.S. at 322–23. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S at 247–48.

### III. DISCUSSION

In its Amended Complaint, Plaintiff alleges a promissory estoppel claim (Count II) and a breach of contract claim relating to Whittaker's personal guaranty (Count IV) against Defendant Whittaker. Plaintiff also alleges two counts against Defendant Diversified (Count I—breach of building materials contract and Count III—specific performance). These counts are, however, identical to the counts against Diversified that were alleged in the original Complaint (Docket 1) and that were resolved by the Court's September 25, 2008, *Memorandum Opinion and Order*. (Docket 46). Accordingly, the Court will examine only the claims against Defendant Whittaker.

*A. Count II—Promissory Estoppel Claim*

Count II of Plaintiff's Amended Complaint alleges that prior to execution of the July 17, 2006, contract that is the subject of this dispute, Defendant Whittaker made certain promises and representations to Plaintiff about Diversified's financial condition, about Whittaker's personal involvement in the construction project, and about Whittaker's June 15, 2005, written personal

guaranty to Plaintiff. Plaintiff alleges that based on those promises and representations, Whittaker foresaw, or should have foreseen, that Plaintiff would rely upon those promises and representations and that Plaintiff reasonably relied upon those promises to its financial detriment. (Docket 160.)

As noted in its September 25, 2008, *Memorandum Opinion and Order*, in West Virginia the doctrine of promissory estoppel operates as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
>
> In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor.

Syl. pt. 3, *Everett v. Brown*, 321 S.E.2d 685 (W. Va. 1984); *see also* Restatement (Second) of Contracts § 90 (1981).

Accordingly, to prevail Plaintiff must show that no genuine issue of material fact concerning the following: (1) Whittaker made a promise; (2) which he should have reasonably expected would induce action or forbearance on the part of Plaintiff; (3) the promise did induce Plaintiff's action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.

In support of its summary judgment motion on the promissory estoppel claim, Plaintiff tenders an affidavit by its senior credit manager, John R. Bouldin, Jr., who states, in pertinent

7

part, that he is familiar with July 17, 2006, building materials contract between Plaintiff and Diversified and Whittaker's June 16, 2005, personal guaranty. (Docket 164-3.) Mr. Bouldin states that, but for the personal guaranty, Plaintiff "would not have extended credit" to Diversified, and that Plaintiff relied on the personal guaranty "for any orders placed by Diversified," including the July 17, 2006, building contract. (*Id.*)

Whittaker's main argument with respect to the promissory estoppel claim is that the Whittaker's personal guaranty related to a separate business transaction and the building materials contract was executed by an individual who was not an authorized agent of Diversified. (Docket 133, 166.) In corroboration of these assertions, Whittaker offers his responses to Plaintiff's requests for admission and interrogatories. (Docket 133-1, 133-2.)

Whittaker's arguments are unavailing. First, the terms of Whittaker's written personal guaranty plainly and unambiguously show that the guaranty was broadly intended to assure Plaintiff that Whittaker—a newly-minted, multi-millionaire lottery jackpot celebrity—would pay any liability that might arise as a consequence of Plaintiff doing business with Diversified at any time. The one-page document is dated June 16, 2005, and states that it is made to "Ceco Building Systems" from "Diversified Enterprises, Inc.," the "builder." (Docket 164-1.) It appears to be signed by Defendant Whittaker and witnessed by Brenda K. Collins. In pertinent part, the guaranty states that Whittaker,

> as an inducement to CECO to extend credit to BUILDER [Diversified] *on an open account basis* for products and services sold and delivered by CECO *from time to time to BUILDER* . . . the undersigned [GUARANTOR does] . . . Guaranty the payment on demand after maturity *of all amounts due and payable from BUILDER to CECO for such products*, together with interest at the rate of one and one-half (1 ½ %) per month on the unpaid balance, whether such indebtedness or other liability arises under the Builder Agreement *or in any other matter whatsoever* . . . .

(*Id.*)

8

>The guaranty further provides:
>
>It will not be necessary for CECO to notify GUARANTOR of CECO's acceptance of this guaranty *or the sale or delivery of any products or services to the BUILDER*. CECO may, without notice to GUARANTOR, extend terms of payment to BUILDER. GUARANTOR further conveys and agrees that CECO may enforce the Guaranteed Obligations of the GUARANTOR by direction [sic] action against GUARANTOR and CECO shall not be required to institute any proceedings against BUILDER before instituting and prosecuting such an action against GUARANTOR.

(*Id.*)

The guaranty expressly provides that Whittaker may revoke the guaranty "at any time by giving CECO thirty (30) days written notice by certified mail of GUARANTOR's intention to terminate it, but such termination will not affect GUARANTOR'S liability for payment of indebtedness existing prior to the date of termination." (*Id.*)

Under West Virginia law, it is the duty of the court, and not the jury, to interpret a written contract. *Ingram Coal Co. v. Mower Ltd. Partnership*, 892 F.2d 363, 365 (4th Cir. 1989) (quoting *Orteza v. Monongalia Cnty Gen. Hosp.*, 318 S.E.2d 40, 43 (W.Va.1984)); *see also*, Syl. pt 5, *Dan's Carworld, LLC v. Serian*, 677 S.E.2d 914, 918-19 (2009). Where contract terms are clear and unambiguous, a court must apply and not construe them. Syl. pt. 2, *Bethlehem Mines Corp. v. Haden*, 172 S.E.2d 126, 126 (1969); Syl. pt. 3, *Waddy v. Riggleman*, 606 S.E.2d 222, 234 (2004). Moreover, "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626, 628 (1963). "When the bargain made by the parties is clearly apparent, each is entitled to have it performed without alteration." *Gulf Oil Corp. v. Chiodo*, 804

F.2d 284, 285 (4th Cir.1986) (citing *Wheeling Mold & Foundry Co. v. Wheeling Steel & Iron Co.*, 57 S.E. 826, 832 (1907)).

Whittaker fails to make a sufficient showing that a genuine issue of fact exists concerning his contention that his personal guaranty did not relate to the July 17, 2006, building materials contract. Whittaker does not contest the personal guaranty's authenticity, only its construction. (Docket 133-1 at 20.) In support of his argument that the personal guaranty relates to a separate building contract, Whittaker generally directs the Court's attention to his twenty-two page response to Plaintiff's first set of requests for admissions. (Docket 133-1.) In that document, Whittaker makes a series of unelaborated and flat denials of allegations relating to Plaintiff's promissory estoppel claim. He states in conclusory fashion that his personal guaranty "was restricted to an agreement concerning the purchase of a building from Ceco in 2005." (Docket 133-1 at 20-21.) This is the entirety of the evidence Whittaker offers on the point. He tenders no amendments to the guaranty, no evidence that he rescinded his guaranty, no affidavits, no documents of any kind, no other evidence at all. Whittaker offers no evidence that he rescinded his guaranty (as he was well within his rights to do). The guaranty is broad and unqualified (an inducement for Plaintiff to extend credit "*on an open account basis for products and services sold and delivered by CECO from time to time to BUILDER*"). The date of the guaranty precedes the date of Plaintiff's building contract (about a year) and in light of the open-ended nature of the guarantee, is of reasonable proximity to the date of the building contract. Plaintiff's evidence from its credit manager that, but for the personal guaranty, Plaintiff would not have extended credit to Diversified and that Plaintiff relied on the personal guaranty "for any orders placed by Diversified," including the July 17, 2006, building contract is unrebutted by Whittaker. (Docket 164-3.) Whittaker has offered the Court no good reason why the personal guaranty

should not be applied by the Court according to its plain terms. In sum, Whittaker fails to show sufficient facts presenting a genuine issue for trial with respect to his contention that the personal guaranty did not extend to the July 17, 2006, building materials contract.

Whittaker's second contention—namely, that the July 17, 2006, building materials contract was unenforceable because it was not entered into by an authorized Diversified agent—fails for two reasons. First, the Court has already determined that Diversified breached its building contract with Plaintiff. Implicit in—and essential to—that judgment is the Court's finding that the contract was valid and enforceable. It would be an injustice to Plaintiff to permit that final judgment to be collaterally attacked, particularly given the unfortunate and lengthy procedurally history of this case. Second, even if the issue were a fair subject of litigation, Whittaker, as before, offers no evidence beyond his bald assertion that the building materials contract "was not executed by any officer or other agent of Diversified who possessed the authority to enter into such an agreement." (Docket 133-1 at 3-4.) This bare, conclusory, *ipse dixit* allegation, unadorned by any corroborating evidence, does not warrant a finding that a genuine issue of material fact exists on this point. Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment with respect to Plaintiff's promissory estoppel claim.

> B.  *Count IV—Breach of Contract (Personal Guaranty) Claim*

Plaintiff's breach of contract theory is straight-forward: Whittaker promised to personally guaranty any debt Diversified incurred relating to business with Plaintiff; in exchange for that promise, Plaintiff would and did contract with and extend credit to Diversified; Diversified

11

incurred a debt to Plaintiff, which it did not pay; and Whittaker breached his promise to pay Diversified's debt to Plaintiff. (Docket 164 at 3.)

Defendant Whittaker argues that Plaintiff is not entitled to summary judgment on its contract claim because "Whittaker did not breach any duties or obligations owed to Ceco under the Personal Guaranty because Whittaker owed no duties or obligations to Ceco to perform under the Personal Guaranty." (Docket 166 at 9.) Whittaker also claims that summary judgment cannot be granted on the breach of contract claim because he has not been afforded an opportunity to conduct discovery on mitigation of damages by Plaintiff.

These contentions lack merit. The Court rejects Whittaker's arguments because, as just noted, the personal guaranty is clear, unambiguous, and must be applied by the Court as written. Pursuant to Federal Rule of Civil Procedure 56(c)(2), parties may object to the Court's consideration of inadmissible evidence on summary judgment. Here, as Plaintiff argues, Whittaker's contention that the personal guaranty did not relate to the July 17, 2006, building materials contract implicates the parol evidence rule. It is well-settled that "parol evidence may not be admitted to alter or amend the terms of an unambiguous contract." *Travelers Ins. Co. v. Austin Ins. Agency, Inc.*, No. 94-1295, 1994 WL 592758 * 4 (4th Cir. Oct. 31, 1994); *Tri-State Asphalt v. McDonough Co.*, 391 S.E.2d 907, 911 (1990); *Glenmark Assocs. v. Americare of West Virginia*, 371 S.E.2d 353, 356 (1988); *Holiday Plaza, Inc. v. First Fed. Sav. & Loan Ass'n of Clarksburg*, 285 S.E.2d 131, 133 (1981). As for Whittaker's contention that he should be permitted to conduct discovery on mitigation of damages, that argument likewise fails because mitigation is a defense that pertains to Diversified's breach of the building materials contract—a contest already decided by this Court and reduced to final judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motions for summary judgment [Docket 131, 164] against Defendant Whittaker and **DISMISSES** this case from the Court's docket. A separate Judgment Order will be filed this day implementing the Court's judgment.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 13, 2012

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE